FILED
Clerk
District Court

JAN 23 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

**Lillian A. Tenorio**
**Attorney at Law**
P.O. Box 501794
Saipan, MP 96950

Tel.: 234-7850
Fax: 234-7855

Attorney for Plaintiffs/Judgment Creditors Angelito Trinidad, Esperanza David, Ronnie Palermino, and Tony Alovera

# IN THE UNITED STATES DISTRICT COURT
# FOR THE
# DISTRICT OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ANGELITO TRINIDAD, et al, <br><br> Plaintiffs, <br><br> vs. <br><br> JOHN S. PANGELINAN, et al., <br><br> Defendants. | CIVIL ACTION NO. 97-0073 <br><br> **REPLY TO DEFENDANTS' OBJECTION TO MOTION FOR WRIT OF EXECUTION AND SALE OF REAL PROPERTY** <br><br> Date: January 26, 2006 <br> Time: 10:30 a.m. <br> Judge: David A. Wiseman |

In their Opposition of January 17, 2006, Defendants John and Merced Pangelinan claim that no writ should issue since: (1) this court lacks subject matter jurisdiction and personal jurisdiction over them; (2) no order of the court is necessary to issue a writ of execution; (3) requesting the writ constitutes abuse of process since, according to the Pangelinans', the judgment has already been satisfied and discharged by the Plaintiffs' prior purchase of some Pangelinan

property and/or by the rents collected from the lease or use of the purchased property; (4) the judgment is dormant and no writ of execution can issue; and (5) the property at issue should be exempt from execution as income-producing property and/or Defendants' place of residence. Each of these objections are without merit.

**1. Defendants' Objections to Subject Matter and Personal Jurisdiction are Barred by Res Judicata**

This Court and the Ninth Circuit Court of Appeals have unequivocally, conclusively, and repeatedly rejected the Pangelinans' objections to personal and subject matter jurisdiction. *See Trinidad v. Pangelinan*, 54 Fed. Appx. 470, 2003 U.S. App. LEXIS 902 (9th Cir. 2003) (not selected for publication) (rejecting Defendants motion to void judgment for lack of jurisdiction declining to accept further filings from Defendants in closed appeal), *cert. denied*, 538 U.S. 1064, 123 S.Ct. 2232, 155 L.Ed.2d 1119 (2003); *Trinidad v. Pangelinan*, 32 Fed. Appx. 357, 2002 WL 461731 (9th Cir. 2002)(confirming subject matter and personal jurisdiction over the Pangelinans). In utter disregard of these rulings and for the fourth time, the Pangelinans nevertheless continue to object to jurisdiction. Since this court continues to entertain jurisdiction over post judgment proceedings pursuant to Fed. R. Civ. P. 69, there is no merit to the Pangelinans' jurisdictional attack. Principles of *res judicata* thus prevent the Pangelinans from relitigating the jurisdictional issues again.

### 2. The Motion for a Writ of Execution is Proper

Fed. R. Civ. P. 69(a) provides, in material part, that "[p]rocess to enforce a judgment for the payment of money shall be a writ of execution, unless the court directs otherwise." The Rules further mandate that procedure on execution, in proceedings supplementary to and in aid of a judgment, as well as in proceedings on and in aid of execution shall be in accordance with the practice and procedure of the state in which the district court is held, existing at the time the remedy is sought. *Id.*

Although the Pangelinans contend that the writ should issue automatically and thus the motion to obtain a writ is improper, 7 CMC § 4203 provides otherwise. Section 4204 provides that writs of execution issue upon and "at the request of the party recovering a civil judgment in the court for the payment of money." Since a request is preliminary to obtaining the writ and this court entertains requests in the form of motions, the motion is proper. *See Trinidad v. Pangelinan*, 32 Fed. Appx. 357, 359, 2002 WL 461731, Slip Op. at 2 (recognizing propriety of proceeding via writ of execution and levy in post judgment proceedings).

### 3. The Sale of the Original Properties Did Not Satisfy the Judgment

Following entry of judgment against the Pangelinans in this case, certain properties were auctioned and sold to Plaintiffs as judgment creditors, on June 26,

2001. See Order Confirming Sale of Fee Simple Determinable Estates in Four Parcels of Real Property. In Appeal No. 01-16622, the Pangelinans appealed the sale of their real property to satisfy the judgment against them to the Ninth Circuit Court of Appeals. In their appeal, the Pangelinans never contested whether the sale price was fair and reasonable or whether the sale of their properties necessarily wiped out any deficiency judgment existing against them as a matter of law, and thus are precluded by principles of *res judicata* and statutes of limitation from doing so now.

While a number of jurisdictions have enacted statutes which prohibit or limit the availability of actions for deficiency after the sale of collateral in foreclosure proceedings, the Commonwealth has not. Nor is this an action for judicial foreclosure under the Uniform Commercial Code following a default upon a debt. Unsurprisingly, the Pangelinans fail to cite to any case law in the Commonwealth precluding a judgment creditor from instituting additional or successive proceedings to collect the remainder of the judgment after certain properties of the debtor have been sold to satisfy a portion of the judgment at a judicial sale.

Undisputed facts reflect that on March 20, 2000, judgment was issued by this Court in the original amount of $205,787.34, plus attorney's fees of $70,200.00 and costs of $3,375.20, totaling $279,362.54 plus interest of 6.19% per

annum until paid.[1] Pursuant to 7 CMC § 4204, Plaintiffs partially executed on the judgment by obtaining an order selling certain properties at auction, after required notice was given, for the amount of $210,000.00, leaving a $88,211.45 deficit remaining in addition to accrued interest. See Declaration of Counsel, attached to and incorporated into Motion for Writ of Attachment.

In the Commonwealth, parties may proceed to enforce judgments by writs of execution, orders in aid of judgment, by civil actions on a judgment, or by any other manner known to American common law or common in courts in the United States. *See* 7 CMC §§ 4101 and 4104. Accordingly, Commonwealth law authorizes the court to issue any number of writs of execution and orders in aid of judgment until payment of the judgment is made in full. *See* 4 CMC §§ 4205-4206 (authorizing the court, at any time prior to satisfaction of a judgment, to hold a hearing on the question of the debtor's ability to pay a judgment and the fastest manner in which the debtor can reasonably pay the judgment, and making such orders as necessary to sell particular assets and transfer the proceeds from such sale to the creditor). Given these realities, the Pangelinans' position, that a single sale of a portion of the Pangelinans' properties satisfied the judgment and no deficiency can remain, defies logic. In short, no statute requires Plaintiffs to bring a separate action to determine the deficiency or precludes Plaintiffs from

---

[1] Amounts owing were increased by such additional and further sanctions ordered by this court on July 7, 2001; September 6, 2001; January 8, 2004; and April 1, 2004, respectively.

collecting the deficiency. Accordingly, there is no abuse of process in seeking to satisfy the outstanding balance of the judgment.

### 4. The Time for Obtaining the Writ Has Not Expired.

Many jurisdictions have statutes providing that a judgment will become dormant if there is no issuance of execution on it for a certain period of time. In a number of these jurisdictions, issuance of an execution on the judgment prevent it from becoming dormant, while in others, the taking of specified steps before the expiration of the statutory period, for the purpose of extending the period for collection or reviving a judgment, are mandated.

Without reference to any legal authority save that of AmJur, the Pangelinans contend that a writ of execution may not issue beyond a year and a day, *see* Objection at 4, Commonwealth law proves precisely the opposite to be true. Seven CMC § 2501 provides a judgment with a life of twenty years.[2] Since the judgment issued in 2000 and Plaintiffs have gone to considerable effort and expense in trying to collect it, under no circumstances can it be argued that the time has lapsed for collection or that they have been any less than diligent in pursuing assets available for the judgment's satisfaction.

### 5. Lot E.A. 222 Is Not Exempt from Execution.

The Pangelinans also argue that Lot E.A. No. 222 should be exempt from

---

[2] 7 CMC § 2501 states: "A judgment of any court shall be presumed to be paid and satisfied at the expiration of 20 years after it is rendered."

- 6 -

sale since they use it as their place of residence and source of income. *See* Objection at 5; Declaration of John S. Pangelinan in Support of the Pangelinans' Objection to Motion for Writ of Execution. While Commonwealth law renders certain property exempt from execution, all interests in land owned solely by a judgment debtor, in his or her own right, "may be ordered sold or transferred under an order in aid of judgment if the court making the order deems that justice so requires and finds as a fact that after the sale or transfer, the debtor will have sufficient land remaining to support himself or herself and those persons directly dependent on the debtor according to recognized local custom and the law of the Commonwealth." 7 CMC § 4210(c).

Justice so requires a sale in this case. John Pangelinan admits, in his Opposition, that he has numerous real properties of various sizes and various interests from which to earn his living. *See* Opposition at 5. While Pangelinan contends that he uses the Papago property for income, it is equally clear that he derives income from numerous other properties, as well. In light of this reality, there is no "unalterable conclusion" that all income producing property is exempt from attachment and execution, as Pangelinan contends. Because, by his own admission, John Pangelinan owns numerous other properties on which he may choose to live and which provide amply for his income, he can show no hardship by the sale of this one.

### 6. The Judgment Has not Been Satisfied or Discharged.

John Pangelinan has done everything in his power to prevent the satisfaction of the judgment. Nor has the judgment been satisfied and discharged by the rents attached under the writ of attachment, issued by this court in connection with Lot No. 014 D 03 in Garapan.

In their Objection, however, the Pangelinans argue that the rents obtained from property later purchased by Plaintiffs at the judicial sale should have wiped out the judgment. In other words, the Pangelinans claim that the deed Plaintiffs obtained by judicial sale did not give them any right to collect rents from the Property. The "reservation argument," however, is neither novel nor sound, having been disposed of by this court before in its January 4, 2004 Order Denying Defendants' Motion to Compel Accounting, currently before the Ninth Circuit on appeal. *See Pangelinan v. Trinidad*, Docket No. 04-15287 (9th Cir. 2004). The facts reflect that prior to the sale of certain Pangelinan property at auction, Plaintiffs had obtained a writ of attachment on the income from one of the parcels known as Lot 014 D 03 in Garapan (the "Property"), leased by the Pangelinans to Marianas Seaside Development Corporation ("MSDC")and doing business as the Bras Restaurant. Although neither the Order Confirming Sale nor any other document reserved any portion of the rental income from the MSDC lease to the Pangelinans, on December 10, 2003 the Pangelinans filed a motion for an

accounting of rents paid by MSDC in order to credit ongoing rental income from the Property against amounts still owing on the judgment. *See* Pangelinans' Motion to Compel Accounting of Proceeds Obtained by the Writ of Attachment Issue Attachment to Cease to Remain in Effect Pursuant to Rule 64(B)(5), Fed. R. Civ. P. And Notice of Motion Hearing. In that motion, the Pangelinans contended that the right to receive rent never transferred to the Plaintiffs in the judicial sale, and that the writ of attachment survived the judicial sale. On January 4, 2004, however, this court entered its Order denying the motion in its entirety and awarding sanctions against the Pangelinans for their frivolous and bad faith filing.

In the Commonwealth, as well as in virtually all jurisdictions that have considered the issue, a purchaser at a judicial sale takes title subject to all prior liens and encumbrances.[3] Accordingly, as a result of the judicial sale but subject to the restrictions of Article XII of the CNMI Constitution, all rights, title, and interest of the Pangelinans in the Property passed to Plaintiffs, including the right to collect income from the rent under the MSDC lease. As a result of the judicial sale, the Pangelinans lost all rights to the rental income from the Property. Accordingly, the trial court properly ruled that their motion seeking to apply rent

---

[3] *See, e.g., Kucharis v. United States*, 1995 WL 151791 (N.D.Ill. Mar.31, 1995) at 5, n. 2 (judicial sale does not terminate lease); *Jones v. Nix*, 334 S.W.2d 891, 895 (1960) (at judicial sales, the purchaser acquires the same title and rights as the person whose interest is being sold, and thus he acquires the property subject to all liens); *Patron v. American Nat. Bank of Jacksonville*, 382 So.2d 156, 158 (Fla.App. 1980) (purchaser at a judicial sale takes title subject to any and all liens and encumbrances). The Commonwealth has codified this precept in 2 CMC § 4537(e) which provides, in material part, that when mortgaged property is sold, the sale "shall not affect the rights of persons holding prior recorded encumbrances upon the same estate or part thereof." 2 CMC § 4537(e).

to offset amounts still owing under the judgment entirely lacked legal merit.[4] *See* Order of January 4, 2004, Denying Defendants' Motion for An Accounting and Granting Plaintiffs' Motion for Sanctions.

Without regard to this court's January 4, 2004 Order or the time and expense imposed on Plaintiffs who are forced to respond to the meritless argument once again, the Pangelinans again argue that rental income obtained from the Property following the Order of Sale should be applied against any deficiency judgment. Objection at 6. There is, however, no basis in fact or in law to justify this tired claim. Because the Pangelinans have no basis for arguing that rents from the Property continue to belong to them (*see* Objection at 6), the argument is plainly frivolous. For their insistence upon raising it yet again, sanctions are in order.

As a result of the Pangelinans' refusal to accept that Lot No. 014 D 03 no longer belongs to them and their continued insistence upon rehashing previously rejected legal conclusions, Plaintiffs have been forced to incur legal expenses and other costs to respond. John and Merced Pangelinan continue to pursue this matter and refuse to recognize the court's disposition of it in whatever forum is available to them. No clearer case warranting sanctions exists.

---

[4] In Appeal 04-15287, the Pangelinans are appealing this ruling.

# CONCLUSION

Contrary to the Pangelinans' view of the facts and the law, this court may properly exercise jurisdiction over the Pangelinans in all matters necessary to satisfy its judgment. *See Blackburn Truck Lines, Inc. V. Francis*, 723 F.2d 730, 732 (9th Cir. 1984); *Trinidad v. Pangelinan*, 32 Fed. Appx. 357, 358-360 (9th Cir. 2002) (unpublished decision).[5]  The Pangelinans themselves admit, moreover, that the property identified for execution is only one of many properties in which the Pangelinans have an interest and from which they derive income.  Following the sale of this property, therefore, there is no question that the Pangelinans will continue to have sufficient land remaining to support themselves and those persons – to the extent that any even exist – dependent upon the Pangelinans according to recognized legal custom and the law of the Commonwealth. Therefore, no bar exists that would preclude the sale of Lot E.A. No. 222 in Papago, Saipan.

In raising arguments in Opposition, moreover, that have been unequivocally been rejected by this court many times before, the Pangelinans expose themselves to sanctions.  Although the Pangelinans never prevail in their jurisdictional and related arguments, they show no signs of stopping.  To put an end to the Pangelinans' harassment and to compensate Plaintiffs for the frivolous Objection,

---

[5] Prior decisions of this Court and the Ninth Circuit Court of Appeals are relevant to the law of the case and Plaintiffs' contentions that virtually all arguments raised by the Pangelinans' in their Objection are barred under principles of *res judicata.*

sanctions in the form of costs and attorney's fees are in order. Accordingly, an award of costs and attorney's fees should be imposed by the court.

Respectfully submitted on this 23rd day of January, 2006.

_____
Lillian A. Tenorio
Attorney for Plaintiffs Angelito
Trinidad, Esperanza David, Ronnie
Palermino, and Tony Alovera