**JOHN S. PANGELINAN**
P. O. Box 501721
Saipan, MP  96950

Telephone No. (670) 256-0526

Pro se

F I L E D
Clerk
District Court

AUG 1 4 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

## IN THE
## UNITED STATES DISTRICT COURT
## FOR THE
## NORTHERN MARIANA ISLANDS

| | | |
|---|---|---|
| **ANGELITO TRINIDAD, et al.** | ) | Civil Action No. 97-0073 |
| | ) | |
| Plaintiffs, | ) | |
| | ) | **OPPOSITION TO PLAINTIFFS'** |
| | ) | **MOTION FOR LEAVE TO CON-** |
| v. | ) | **DUCT DISCOVERY RELATING** |
| | ) | **TO CHRISTOPHER B. PANGE-** |
| | ) | **LINAN'S CLAIM, TO STAY SALE** |
| | ) | **OF LOT NO. E.A. 222, AND RE-** |
| **JOHN S. PANGELINAN, et al.** | ) | **QUEST FOR SANCTIONS** |
| | ) | |
| Defendants. | ) | **DATE:** AUG 1 4 2006 |
| | ) | **TIME:** 4:30 P.M. |

COMES NOW, JOHN S. PANGELINAN, herein referred to as "Pangelinan", and objects to plaintiffs' motion for leave to conduct discovery relating to Christopher B. Pangelinan's claim, to stay sale of Lot No. E.A. 222, and request for sanctions, for reasons as follows:

## DISCOVERY IS NOT NECESSARY

Pangelinan does not see the need for discovery. The sale was announced that the "rights, title and interest" of the defendants, if any, were to be sold in Lot No. E.A. 222—not the lot itself. And, everybody knows that a purchaser at a forced sale takes only a quitclaim deed from the auctioneer. Rufo TENORIO Mafnas, hereinafter "Mafnas", came to the sale and made a bid at his own peril, bound by the full rigors of the *caveat emptor* doctrine. It is up to him now if he will pay in the $90,000.00 balance and consummate the deal, or to forfeit his $10,000.00 deposit.

Christopher B. Pangelinan's, hereinafter "Christopher", letter to Mafnas was to give him *actual* notice (which he apparently has by his acknowledgment of the letter in his declaration) of Christopher's claim in Lot No. E.A. 222. When Pangelinan disclosed to the plaintiffs that there was a deed to Christopher in 1994, plaintiffs did not think it proper to cancel the sale or ask for a discovery. It was only after Mafnas got hold of Christopher's letter, knowing that his purchase would be subordinate to the claims of Christopher, that it was decided to get out of the deal or try Christopher's title. As is said in Christopher's letter, he was in possession of Lot No. E.A. 222 and claimed his fee simple title to it all during the time leading up to the sale and to today, and nobody inquired of him of his fee simple claim to the lot. At the very least, Mafnas had constructive notice of Christopher's claim alone by his (Christopher) possession of the lot, and he had the duty before his purchase to inspect the lot and inquire *all* occupants, each and everyone of them, of their claims to the lot. But the record, too, shows that Christopher has a claim to the lot going back in part to 1984 (not 1994-- which has to do with the unrecorded deed)—see, Deed of Gift, Doc. No. 84-0620, Commonwealth Recorder, from John S. Pangelinan to *children* by wife Merced B. Pangelinan (another

2

constructive notice of his claim). If fact, a thorough check of the record *will* disclose that defendants have *no title* in Lot No. E.A. 222—see, e.g., the just mentioned Deed of Gift and the Confirmation Deed, Doc. No. 06-1832, and Quitclaim Deed, Doc. No. 06-1833, Commonwealth Recorder, which were attached to Lillian A. TENORIO's Declaration accompanying plaintiffs' Motion for an Order to Show Cause [] [Why Pangelinan Should Not Be Held In] Contempt of Court. Mafnas failed to do his homework and he now wants out—*with his deposit returned to him.* This, he cannot do.

Plaintiffs are now attempting to *cancel* the sale or are *trying* the title of Christopher. But this is for Mafnas to do, not the plaintiffs. (Unless maybe plaintiffs' attorney Lillian A. Tenorio is doing this because Robert TENORIO Torres [her co-counsel] is first cousin to Mafnas and does not want to sour that relationship [I suggest the court looks into this first before deciding anything on the motion] and also that Mafnas may get his deposit money back by the cancellation of the sale. Maybe.) So, what if the discovery produces the deed, will that cancel the sale? Pangelinan does not think so. And, if plaintiffs should decide to move the court and confirm the sale, will that defeat Christopher's title or claim? Again, Pangelinan does not think so. More importantly, will confirmation vest title in Mafnas when the record discloses *no title* to the lot in the defendants? What do the plaintiffs care whether Mafnas purchased *something* or *nothing*? Why now the hypocrisy of conducting a discovery because Pangelinan did not disclose Christopher's claim in the past, when after Pangelinan went great lengths to prevent the sale? The court is reminded that Pangelinan faces, albeit bogus, criminal charges that he "obstructed" the sale by publication of his "warning" letters to the editor of the local newspapers and the permanent injunction obtained by

3

plaintiffs that Pangelinan vacate the lot upon confirmation of the sale.    Not only that, but Pangelinan offered sale of other properties in substitution of Lot No. E.A. 222 which plaintiffs rejected.    Pangelinan's non-disclosure and past actions and objections bespeak volumes of defects in the title of (or rather the lack of it in) *the defendants* in the lot, and Mafnas had constructive notice of that.    As the song says, "you [Pangelinan] say it best when you say nothing at all."

So now, judicial estoppel stops plaintiffs from canceling the sale, staying the sale or for sanctions.    Plaintiffs must move forward and try to sell other properties of Pangelinan if the sale of Lot No. E.A. 222 is *unmarketable*, or for that matter any other property of Pangelinan or defendants.    Plaintiffs are not required to sell *marketable* properties at a forced sale, and Mafnas is screwed.    Again, for now, Mafnas may pay in the balance $90,000.00 of his bid and get his quitclaim deed, or renege on the deal and forfeit his $10,000.00 deposit.    This does not mean that Pangelinan will not object to a confirmation because Pangelinan will surely object, but Pangelinan will come to that "when it comes time to cross the bridge".    Again, the proper procedure now is to move forward as in all bidding processes.    The next step, if Mafnas does not tender his $90,000.00 bid balance within the time allowed for him to do so, he forfeits his deposit and auctioneer Alexander must call in plaintiffs' bid (plaintiffs through attorney Tenorio made a bid at the sale too, which was for the balance of the "deficiency judgment").    Pangelinan wonders why attorney Tenorio overlooks this.    Should she not be doing this for her clients?    The law of contracts ("offer" and "acceptance") applies fully at all public auctions.    Pangelinan stops here and speaks no further on this particular matter—

no need to. But plaintiffs seem to forget that defendants have *interests* in the fruits of the sale, superior to that of the bidders who made their bids at their own peril.

### STAY OF SALE IS UNWARRANTED

In addition to the above reasons why the sale should not be stayed, Pangelinan objects to the stay of sale because plaintiffs now attempt to have nullified the very deeds that gave Mafnas constructive notice of the record disclosure that Pangelinan and defendants have no title in Lot No. E.A. 222. See, plaintiffs' Motion for an Order to Show Cause for Contempt of Court filed concurrently with the motion which is the subject of this objection. In other words, plaintiffs are now indirectly trying the title of Christopher and plaintiffs' attorney is buying time *for Mafnas* to tender his bid balance of $90,000.00. The thing is that even if the deeds are nullified, Mafnas cannot escape *actual notice* of Christopher's claim of fee simple title to Lot No. E.A. 222 and that, because of that fee simple title claim, Pangelinan or the defendants have and had no interest, record-wise and non-record-wise, in the said lot, and that Mafnas takes his deed subject to that notice and claim, if he should want to get his deed. What reason is there to stay when Mafnas, who has not gotten his deed yet, already has *constructive* and *actual* notice of Christopher's claim of fee simple title to Lot No. E.A. 222? Stay of sale would do plaintiffs a dis-service to access Mafnas's $10,000.00 bid deposit and to make good of their bid for the lot. Why am is Pangelinan saying this, is it not plaintiffs' attorney that represents the plaintiffs and who should be rooting for all this? Mmmmm. Mafnas, no matter how it is twisted and turned, will get a quitclaim claim deed—meaning, that his

5

purchase is subject to all defects in the title to Lot No. E.A. 222 and is subject to all notices of prior transfers and claims. Stay of sale or not will not improve his lot in Lot No. E.A. 222. Therefore, stay is unwarranted, would be a waste of time and a dis-service to the plaintiffs.

As noted above, Pangelinan and the other defendants have interests in the sale. Proceeds from the sale will satisfy the judgment and all accumulated interests, costs, and sanctions. In fact, this protracted case will finally terminate. Pangelinan himself will no longer be contemptible to the court for there will no longer be any cause for contempt, which Pangelinan will continue to do for as long as it takes for a petition for writ of habeas corpus to be entertained and obtained— it is the *only* procedure left open to him to have *this* case annulled. Since, however, there are two petitions pending before a circuit judge, Pangelinan sees no need for further petition filing. Stay of sale will only compound matters and add further costs and interest to the judgment balance, and *sanctions*— which plaintiffs incessantly ask.

More importantly, what if the most improbable, but possible, happens: Mafnas tendering the $90,000.00 and demands for his deed? Will this possibility be rejected because the sale has been stayed? Worse, what if he withdraws his bid because his tender will not be accepted? Will plaintiffs take responsibility and write off the judgment balance, interest, costs and sanctions— everything? Most assuredly, this will be demanded of the plaintiffs by Pangelinan and the other defendants. And, if the court should grant plaintiffs' stay, then this should be a condition-precedent to the grant of stay, and there should be a *short* time when the stay should expire. But, again, stay is too risky and the sale must move forward.

6

## PLAINTIFFS HAVE NO RIGHT TO SANCTIONS

Pangelinan has been relentless in not having a sale conducted on Lot No. E.A. 222. Pangelinan spent more than 19 months jail time so that plaintiffs may not be encouraged or emboldened to conduct a sale on any of his properties, is now facing a bogus criminal charge for discouraging and warning that at the sale would-be purchaser would acquire nothing in such sale of Lot No. E.A. 222, and is now enjoined to leave the lot should the sale be confirmed by the court. Does Pangelinan miss something, that because plaintiffs think now that they cannot conclude the sale they advertised and finally conducted to sell, the sale of which Pangelinan had been so hardheaded to not be conducted, that he be made to pay now for something plaintiffs were constantly reminded not to do? If anybody here who is at fault it is the plaintiffs, for being too hasty. Pangelinan is not at fault and should not be sanctioned.

Further, it seems it is customary of the plaintiffs to include Merced B. Pangelinan for all the perceived intolerable acts of Pangelinan in their every claim for sanctions, even if she did not do anything. Plaintiffs submitted their "Exhibit 'B'", a deed to Marji-Ann B. Pangelinan from Pangelinan. Merced B. Pangelinan *only* witnessed Pangelinan's execution of the deed. And, what relevance does the exhibit have here? Plaintiffs have had copy, and even the court was provided information relating to it in plaintiffs' previous motions, of the exhibit for more than one year now, long before the court was asked to have Lot No. E.A. 222 sold. Would the exhibit improve Mafnas's lot in Lot No. E.A. 222? In addition to the above reasons, Merced B. Pangelinan did nothing and should not be sanctioned at all. Pangelinan submits this objection solely because he is

indignant to plaintiffs' treatment of Merced B. Pangelinan, who is innocent of all the libelous accusations of the plaintiffs.

And, if the court is inclined to grant sanction, then it should be taken out of the $10,000.00 deposit Mafnas made.  That is one reason why deposits are made— to cover costs leading up to the sale should a bidder renege on his bid.

## SALE IS VOID

Plaintiffs are once again reminded that everything about this case and all proceedings in this case are void.  This court has no jurisdiction over the subject matter and over the Pangelinans and that it proceeded here inconsistent with due process of law. There is now pending before a circuit judge of the U.S. Court of Appeals for the Ninth Circuit two petitions for writ of habeas corpus, both are related to the validity of all the proceedings in this case— heretofore, hereto and hereafter.  Sale is void.

## NOTICE

Pangelinan submits this objection for the record but will not be present at the hearing.  Pangelinan's presence would be fruitless because he knows that whatever the plaintiffs ask, they always get. The record is replete with this, with Pangelinan always getting the deaf ear treatment.

**********

8

Dated this 14th day of August, 2006.

John S. Pangelinan
Defendant, Pro se