JOHN S. PANGELINAN
P. O. Box 501721
Saipan, MP 96950

Telephone No. (670) 256-0526

Pro se

F I L E D
Clerk
District Court

AUG 2 2 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE
UNITED STATES DISTRICT COURT
FOR THE
NORTHERN MARIANA ISLANDS

ANGELITO TRINIDAD, et al.                )
                                         )   Civil Action No. 97-0073
                                         )
        Plaintiffs,                      )
                                         )
                                         )   **OPPOSITION TO PLAINTIFFS'**
                                         )   **MOTION FOR AN ORDER TO**
  v.                                     )   **SHOW CAUSE FOR CONTEMPT**
                                         )   **OF COURT**
                                         )
                                         )   Date: August 23, 2006
JOHN S. PANGELINAN, et al.                )   Time: 4:30 p.m.
                                         )    Judge: David A. Wiseman
        Defendants.                      )
                                         )
_____)

COMES NOW, JOHN S. PANGELINAN, herein referred to as "Pangelinan", and objects to plaintiffs' motion for an order to show cause why the Pangelinans should not be held in contempt of court:

**FACTS**

On December 2, 1999, this court, *sua sponte*, issued this injunction or order from the bench: that the Pangelinans "shall not transfer, convey, sell lease, rent, trade,

encumber, assign, deed, give or hypothecate or hypothecate any interest that they have in a real property without prior written notice to or approval of the court and notice to plaintiffs' attorney." On March 20, 2000, the court entered judgment and amended it the following May. On April 24, 2002, the court entered a final judgment and closed the file on this case. The court did not covert the injunction or order into a permanent injunction at the time the judgments were entered, including the final judgment of April 24, 2002. This case was a suit for *damages* for common law fraud and violation of RICO, Section 1962(c), an action at law.

## DECEMBER 2, 1999 ORDER IS VOID

Not only that the court could not issue the order *sua sponte*, but it had no authority or power to issue it even if a motion was made for one. In <u>GMD, S.A. v. Alliance Bond Fund, Inc.</u>, 119 S.Ct. 1961, 1975 (1999), the U.S. Supreme Court said: "Because such a remedy was historically unavailable from a court of equity, we hold that the District Court had no authority to issue a preliminary injunction preventing petitioners [defendants] from disposing of their assets pending adjudication of respondents' [plaintiffs'] contract claim for money damages." And, no such authority exists at law. In fact, the U.S. Supreme Court said: 'The debate concerning this formidable power over debtors should be conducted and resolved where such issues belong in our democracy: in the Congress." *Ibid.* Congress gave no such power to the district courts around the time this court entered its injunction or order on December 2, 1999, almost six months after the high court's decision, and even until to today. Because this court had no authority to

issue the injunction or order of December 2, 1999, the injunction or order is void. This is especially the case here where the plaintiffs were not even creditors of the Pangelinans when the suit was brought and when the remedy they were praying was for damages and not money owed.

Thus, it "is not contempt to disobey a void mandate, order, judgment, or decree, or one issued by court without jurisdiction of the parties involved and of the subject matter." Western Fruit Growers v. Gotfeid, 136 F.2d 98, 100 (9th Cir. 1943). "[T]he accused contemnor cannot be fairly punished for violating nothing at all." In Re Establishment Inspection of Hern Iron Works, 881 F.2d 722, 726-27 (9th Cir. 1989). That is, the injunction or order of December 2, 1999, being void may be disobeyed because nothing was violated at all.

## ORDER EXPIRED ON APRIL 24, 2002

Even if the order was validly issued, it was not converted into a permanent injunction around the time judgments were entered by the court, and it expired on April 24, 2002, when the court entered its *final* judgment. The U.S. Court of Appeals for the Ninth Circuit in United States of America v. John S. Pangelinan, Doc. No. 02-10535 (2004), said the following in regards to a similar injunction related to this case:

> The district court never converted its August 6, 2001 order issuing a preliminary injunction into a permanent injunction, nor did it indicate any intent for the preliminary injunction to continue beyond the entry of final judgment. Therefore, the preliminary injunction expired upon the entry of a final judgment on April 24, 2002. *See Taylor v. United States*, 181 F.3d 1017, 1022 n.9 (9th Cir. 1999; *Sweeney v. Hanley*, 126 F. 97, 99 (9th Cir. 1903).

> Pangelinan cannot be held in criminal contempt of an expired injunction. Pangelinan's conviction for criminal contempt under 18 U.S.C. §401(3) is **REVERSED**.

The court is asked to take judicial notice of this decision by the court of appeals. *See,* United States of America v. John S. Pangelinan, Doc. #02-00015, District Court for the Northern Mariana Islands (judgment and mandate of 9th circuit court).

There is no indication in the case here that the court intended for the *sua sponte* injunction or order of December 2, 1999, to continue beyond the entry of the final judgment on April 24, 2002. The Pangelinans, too, cannot be held in *civil* contempt of an expired injunction or order of the court.

## JUDGMENT SATISFIED

The sale of July 28, 2006, conducted on the interests of the defendants in Lot No. E.A. 222 garnered a $100,000.00 bid from a Rufo T. Mafnas— backed by a little lesser bid from the plaintiffs and a $10,000.00 bid deposit. This sum is more than sufficient to satisfy the judgment, interest, costs and whatever outstanding sanctions amount. Pangelinan will make in the days to come for a Rule 60(b)(5) for relief from the encumbrances of the order upon him, if the injunction or order is still valid. The *purpose* of the December 2, 1999, injunction or order was to prevent the alienation of defendants' properties in order that they may be sold to satisfy the money judgment of the court. Now that that has been accomplished, there is no reason or purpose to hold the Pangelinans in contempt. Federal courts adhere to "the principle that 'only (t)he least possible power adequate to the end proposed' should be exercised in contempt cases."

Young v. United States ex rel. Vuitton & Fils S.A., 481 U.S. 787, 801, 107 S.Ct. 2124, 2134 (1987)(quoting United States v. Wilson, 421 U.S. 309, 319, 95 S.Ct. 1802 (1975)). This matter was addressed by the U.S. Court of Appeals for the Ninth Circuit in United States v. Armstrong, 781 F.2d 700, 703(9th Cir. 1986), wherein it discussed the "least possible power doctrine" as requiring courts to exercise the "least possible power adequate to the end proposed." Because the sale will fully satisfy the judgment and everything in this case, there is no further power necessary for the court to exercise to accomplish the end purpose of satisfying the money judgment of the court. Rather, the court should terminate this case for once and for all, upon receipt and disbursement of the proceeds of the sale.

Further, even if the court should annul the deeds, it will not accomplish the intended *purpose* of the plaintiffs' motion, although Pangelinan is not quite sure just what that is. That is, the deed to Marji-Ann B. Pangelinan, at the very least, only quitclaimed Pangelinan's *reversionary* interest in Lot No. E.A. 423, which Pangelinan may do any time in the future when this case is finally terminated and the injunction or order of December 2, 1999, is no longer of concern. As for the other two deeds, the successful bidder to Lot E.A. 222, had *constructive* notice of the true owner's claim to the lot alone by his possession of the lot prior to and at the time of its sale on July 28, 2006, and, moreover, the bidder has *actual* notice of the true owner's claim of fee simple ownership in the lot. Annulment of the deeds will not accomplish anything. There is no necessary power for the court to exercise to accomplish the end purpose of the plaintiffs' motion.

**DENIAL OF DUE PROCESS IMPLICATED**

5

Plaintiffs pray that the court nullifies the perfectly valid deeds that are the subject of their motion as a remedy for contempt of court. Not only that this is a preposterous legal notion, but it must be remembered that the deeds manifested property interests in third parties who are not parties to this case, and who were not even notified of plaintiffs' motion and hearing. To void the deeds will be tantamount to the recipients therein as a deprivation of their property interests without *due process of law*. Proceeding of a court is void where it proceeded inconsistent with due process of law. *See*, United States v. Berke, 170 F.3d 882, 883 (9th Cir. 1999). Not only that, but plaintiffs tread perilously on other people's due process rights proscribed by 18 U.S.C. §241.

Furthermore, invalidation of perfectly valid deeds as a remedy in a civil contempt proceeding is not available. Civil contempt is *coercive* in nature as opposed to criminal contempt which is punitive and a vindication of the court's authority. It is to coerce compliance with its order by the contumacious person that makes it a civil contempt, and the court acts only upon the contumacious person, *in personam*. *See*, United States v. Armstrong, 781 F.2d 700 (9th Cir. 1986); Shillitani v. United States, 86 S.Ct. 1531 (1966). Nullification of deeds has never been a remedy available in civil contempt.

**DEEDS ARE HARMLESS**

Pangelinan alone (Merced B. Pangelinan did not) executed the deeds which are the subject of plaintiffs' motion. But the deeds conveyed nothing that would deprive plaintiffs of assets that would satisfy the judgment-- that being the end purposed by the

injunction or order of December 2, 1999. The deed to Marji-Ann B. Pangelinan, regarding Lot No. E.A. 423, was executed <u>after</u> it was sold to the plaintiffs in the attempt satisfaction of the judgment of this court in this case. What, were the plaintiffs going to have the Pangelinans' interest in the lot be sold *again*... that the Pangelinans should be held in contempt, when they already proceeded to a sale of the Pangelinans' interest in another lot, the outcome of which is more than enough to satisfy the "deficiency judgment" and everything?

In regards to the Confirmation Deed, it did just that— it confirmed a previous transfer made long before the December 2, 1999, injunction or order issued and, as the recitals stated in the premises of the deed, it was executed and recorded in order to impart constructive notice of the previous transfer. The deed *did not* transfer any interest in property enjoined by the order. In regards to the quitclaim deed, the recitals in the premises of the deed explain everything and the deed did not transfer anything that was not already transferred in the long-before transfer made to Christopher B. Pangelinan. The deed was a back-up to the Confirmation Deed and, again, to impart constructive notice regarding the long-before transfer to Christopher B. Pangelinan.

No interests of the Pangelinans in property were transferred by the latter deeds which were enjoined by the injunction or order of December 2, 1999. The Pangelinans are not disobedient to the injunction or order. In addition, Merced B. Pangelinan witnessed <u>only</u> one deed, which is the one to Marji-Ann B. Pangelinan, and did not execute nor witness the other deeds— she cannot be held *in disobedience to the* injunction or order of December 2, 1999.

## SANCTIONS CANNOT BE IMPOSED

Plaintiffs are not entitled to sanctions. The court stayed sanctions in its order of August 15, 2006, presumably to be acted upon at the hearing on this motion of the plaintiffs. In the previous motion, plaintiffs spoke nostalgically of continuing fraud by Pangelinan by supposed conveyances of properties that hindered satisfaction of the judgment they have against the Pangelinans. But if that is the case, then, if *this* case has any validity, plaintiffs have a cause of action against Pangelinan. This is not *déjà vu* to the plaintiffs. But as Pangelinan has been arguing all the time as to why this entire case is void is that plaintiffs do not have a case against the Pangelinans. Plaintiffs have no case against the Pangelinans and are, therefore, not entitled to any sanctions.

## PROCEEDING IS VOID

The court and the plaintiffs are once again reminded that this proceeding is void for lack of jurisdiction over the subject matter and *in personam* over the Pangelinans, and that it proceeded inconsistent with due process of law. Presently, there are two petitions for writ of habeas corpus pending before a circuit judge of the U.S. Court of Appeal for the Ninth Circuit relating to the validity of all proceedings in this case. Pangelinan wishes to note that it is the same circuit judge who voted for reversal of this court's conviction in Pangelinan's criminal contempt of court case above-mentioned who has the petitions under consideration.

## NOTICE

Again, Pangelinan submits this objection for the record but will not be present at the hearing. Pangelinan's presence would be fruitless because he knows that whatever the plaintiffs ask, they always get. The record is replete with this, with Pangelinan always getting the deaf ear treatment.

## CONCLUSION

In conclusion, the court must reject plaintiffs' motion altogether.

Dated this 22nd day of August, 2006.

_____
John S. Pangelinan
Defendant, Pro se