Lillian A. Tenorio
Attorney at Law
P.O. Box 501794
Saipan, MP 96950

Tel.: 234-7850
Fax: 234-7855

Attorney for Plaintiffs/Judgment Creditors Angelito Trinidad, Esperanza David, Ronnie Palermino, Herman Tejada and Tony Alovera

FILED
Clerk
District Court

SEP 2 5 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

# IN THE UNITED STATES DISTRICT COURT
# FOR THE
# DISTRICT OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ANGELITO TRINIDAD, et al., <br><br> Plaintiffs, <br><br> vs. <br><br> JOHN S. PANGELINAN, et al., <br><br> Defendants | CIVIL ACTION NO. 97-0073 <br><br> PLAINTIFFS' RESPONSE TO DEFENDANTS' RESPONSE TO SUA SPONTE ORDER TO SHOW CAUSE |

The Plaintiffs renew their argument made at the August 19, 2006 hearing, that John Pangelinan's execution and recording of the two deeds on the eve of the second scheduled sale of E.A. 222, runs afoul of the court's Temporary Restraining Order in effect on July 27, 2006, which was issued pursuant to the

court's order of the execution and judicial sale of the lot. *See* Order Granting Motion for Temporary Restraining Order (June 29, 2006); Amended Order granting Writ of Execution (Mar. 8, 2006) and Order Granting Writ of Execution (Jan. 27, 2006).

Contrary to Defendant's assertion, the court has inherent authority to issue sua sponte an order to show cause within the context of the execution process. *See* 18 U.S.C. § 401(3) (1988) ("A court of the United States shall have power to punish . . . at its discretion, such contempt of its authority . . . as disobedience or resistance to its lawful writ, process, order, rule, decree, or command."); *see also McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 193-194 (1949).

The ultimate control over the execution process lies with the court. *See, Markofski v. Yanks*, 146 A. 569, 570 (1929). It alone has the oversight responsibility to ensure that the execution process is not abused. *See Unity Sav. Ass'n v. American Urban Sciences Foundation Inc.*, 487 A.2d 356, 359 (1984). In connection with that responsibility, the court necessarily possesses the authority to enforce compliance with its orders issued during the course of the execution proceedings.

When facts such as those contained in the exhibits are brought to the court's attention, it is proper for the court to issue the order to show for contempt of court against Pangelinan. The suspicious timing of the recording of the deeds to his

- 2 -

sons on the 11th hour before the second judicial sale took place on July 28, 2006, strongly points to Pangelinan's obvious attempt to effectuate a fraudulent conveyance and place the property way out of the reach of the plaintiffs and the successful bidder at the sale. Had those deeds been recorded before the writ issued, they would have served as notice to the public of what title will pass at the sale. In authorizing the sale, court specifically referred to a preliminary title report which showed that Pangelinan as late as September 2005 had the entire right, title and interest to the property. *See* Order Amending Writ of Execution at 3 (Mar. 8, 2006). Far from disclaiming ownership as he does now, Pangelinan argued then, as would a typical landowner, that the property is statutorily exempt because he was receiving income from the property. He should be judicially estopped from claiming otherwise. *See Haley v. Dow Lewis Motors, Inc.* 5 Cal. Rptr. 2d 352, 360 (1999).

Failing to persuade the court at the January 26, 2006 hearing and realizing that he had no defenses against the execution and sale of E.A. 222, Pangelinan engaged in extreme conduct of harassment, intimidation and obstruction. All to familiar with Pangelinan's tactics, the court granted Plaintiffs' motion for Temporary Restraining Order ("TRO") which was later converted into a permanent order. *See* Order Granting Motion for Temporary Restraining Order (June 29, 2006); Order Granting Motion for Permanent Injunction (August 2,

2006).

In effect at the time of the recording of the deeds, the TRO restrains Pangelinan and others from "impeding or interfering with the levy on and judicial sale of E.A. 222, acquisition of the property, subsequent occupancy, transfer, quiet enjoyment or other use" pending the final hearing on the request for permanent injunctive relief. *See* TRO at 4.

Undeterred by the TRO, Pangelinan proceeded with executing and causing the following deeds to be recorded: (1) a Confirmation Deed "confirming" the transfer of a life estate to his son Christopher pursuant to an alleged unrecorded deed made on January 3,1994;   and (2) a Quitclaim deed purportedly to convey a remainderman estate to his son Carlo. *See* Exs. "B" and "C" attached to Plaintiffs' Motion for an Order to Show Cause for Contempt of Court.  As asserted, the suspicious timing of the recording strongly indicates that the deeds were fraudulently made with the sole purpose of sabotaging the entire execution and sale process.  The execution and recording of the deeds constitutes the ultimate act of interference well within the ambit of the conduct proscribed in the TRO.   There is no question John Pangelinan did so with full knowledge of the TRO. He should be held in contempt of court.

As to Christopher's and Carlo's ostensible claim to E.A. 222, if any, the Plaintiffs recorded their Judgment Lien which attached upon recordation.  If they

have any claims, it would be up to them to file the appropriate action in another forum or venue to determine their interest if any. Christopher's unrecorded deed purported made on January 3, 1994 was not perfected nor attached at the time that the Plaintiffs recorded their notice of judgment lien on May 9, 2000. What is more, Defendant John Pangelinan recorded or caused to be recorded the deeds and failed to record them before the Judgment Lien. But this discussion is perhaps academic given the Court's Writ of Execution and TRO/ Permanent Injunction against John S. Pangelinan which he has violated.

The court has the inherent authority to fashion a remedy to punish contumacious conduct as deemed appropriate given the circumstances. *Falstaff Brewing Corp. V. Miller Brewing Co.*, 702 F.2d 770, 774 (9th Cir. 1983). As we have stated before, judicial process holds little, if any, meaning to John Pangelinan, and even the sanction of imprisonment carries with it little, if any, deterrence.[1]  Given the unique circumstances giving rise to this order to show cause, the most appropriate remedy would be for the court to order as follows:

1. Find John Pangelinan in contempt of court.

2. As punishment and to enforce the Writ of Execution/ TRO, set aside and

---

[1] See, e.g., exhibits "A" and "B" attached to Combined Response and Motion for Temporary Restraining Order and Permanent Injunctive Relief – letter dated March 30, 2004 from John S. Pangelinan to N. Horiguichi and Mr. Yagi threatening reprisals; letter dated February 1, 2006 from John S. Pangelinan to Lillian A. Tenorio threatening reprisals, attached to the Declaration of Lillian A. Tenorio as Exhibit "B."

declare null and void the Confirmation Deed and the Quitclaim Deed that John S. Pangelinan executed and caused to be filed at the Commonwealth Recorder's Office on July 27, 2006. Let Christopher or Carlo Pangelinan bring whatever claims they have against their father as a consequence thereof.

Respectfully submitted this 25th day of September, 2006.

/s/
LILLIAN ADA TENORIO, ESQ.
Attorney for plaintiffs Angelito Trinidad, Esperanza David, Herman Tejada, Ronnie Palermino, and Tony Alovera