IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ANGELITO TRINIDAD, et al., | Case No. CV-97-0073 |
| Plaintiff, | **ORDER HOLDING JOHN S. PANGELINAN IN CIVIL CONTEMPT OF COURT** |
| vs. | |
| JOHN S. PANGELINAN, et al., | |
| Defendant. | |

This matter came before the court on September 25, 2006, for hearing of the court's *sua sponte* order to show cause why the court should not find John S. Pangelinan in civil contempt. Plaintiffs appeared by and through their attorney Lilian A. Tenorio; defendant John Pangelinan did not appear in court.

**THE COURT**, after considering the arguments of the parties,[1] **HEREBY HOLDS** defendant John S. Pangelinan in **CONTEMPT OF COURT** for failing to appear in court when ordered to do so in violation of the court's Sua Sponte Order to Show Cause, No. 573 (Sept. 7, 2006), and for recording the Confirmation Deed and Quitclaim deed in violation of the court's Order Granting Motion For Temporary Restraining Order, No. 538 (June 29, 2006) [hereinafter Temporary Restraining Order], and the court's Amended Order Granting Writ of Execution, No. 502 (Mar. 8, 2006) (originally issued Jan. 27, 2006) [hereinafter Writ of Execution].

---

[1] While defendant John Pangelinan did not appear in court as ordered to do so, the court did consider his brief titled Causes Showing Why the Pangelinans Should Not Be Held in Civil Contempt in Response to the Court's Sua Sponte Order of September 07, 2006, No. 574 (Sept. 22, 2006). Because defendant John Pangelinan may only represent himself *pro se*, the court considered this brief only in connection with the court's order to show cause against defendant John Pangelinan.

## I. FINDINGS OF FACT

There was clear and convincing evidence of the following facts:

On May 9, 2000, plaintiffs recorded their notice of judgment lien at the Commonwealth of the Northern Mariana Islands Recorder's Office ("Commonwealth Recorder's Office").

On December 30, 2005, plaintiffs made a motion for a writ of execution on Lot No. E.A. 222, property that was at the time of the motion recorded as owned by defendants John Pangelinan and Mercede Pangelinan. Motion For Writ of Execution and Sale of Real Property, No. 463 (Dec. 30, 2005). On January 17, 2006, defendants John and Mercede Pangelinan filed an opposition to plaintiffs' motion for writ of execution and asserted that the property is exempt from sale under 7 CMC §4210(c) because Lot No. E.A. 222 is their property that they live on and "the very property that the Pangelinans use for their sustenance, maintenance and livelihood." Objection to Plaintiffs' Motion For Writ of Execution and Sale of Real Property at 5, No. 477 (Jan. 17, 2006); *see* 7 CMC §4210(c) (exempting from the enforcement of judgments "sufficient land . . . to support [the debtor] and those persons directly dependent on the debtor according to recognized local custom and the law of the Commonwealth [of the Northern Mariana Islands]"). They also argued that, despite defendant John Pangelinan's defiance of the court's order that he submit to plaintiffs' discovery requests for the purposes of identifying real property owned by defendants, plaintiffs must "first exhaust sale of other properties [owned by defendants] before turning to the very property that the Pangelinans use for their sustenance, maintenance and livelihood." Objection to Plaintiffs' Motion For Writ of Execution and Sale of Real Property at 5. Defendants, however, did not provide any information regarding their other real property or evidence supporting their assertion that Lot No. E.A. 222 was being used for their sustenance, maintenance, and livelihood.

On January 27, 2006, the court issued the Writ of Execution upon Lot No. E.A. 222. Lot No. E.A. 222 was scheduled to be auctioned on June 2, 2006. Report on Notice of Sale For June 2, 2006, No. 507 (June 13, 2006).

On June 1, 2006, the day before the scheduled sale, defendant John Pangelinan delivered a letter addressed to an editor to the office of Roy Alexander, the person authorized to levy execution of the sale of Lot No. E.A. 222. The next day, defendant's letter to the editor was published in the Marianas Variety. Among other things, it stated that defendant will never yield Lot No. E.A. 222 to "anyone come typhoon, tsunami, volcanic eruption or the devil himself, and whoever comes over and claims it will feel [his] wrath with a vengeance." John S. Pangelinan, Letter to the Editor, Marianas Variety, *in* Declaration of Roy Alexander Regarding Report on Notice of Sale For June 2, 2006, No. 508 (June 13, 2006). Because of the published letter to the editor, the auction was rescheduled. *See* Report on Notice of Sale For June 2, 2006, No. 507 (June 13, 2006) (explaining that in the interest of the safety of the potential bidders, the auction was rescheduled).

On June 19, 2006, after plaintiffs received a second letter intended to be sent to an editor of a Saipan newspaper, plaintiff's filed a motion for a temporary restraining order. Plaintiffs' Request For Expedited Hearing On Plaintiffs' Combined Response To Order To Show Cause and Request For Injunctive Relief, No. 519 (June 19, 2006). The second letter reiterated that defendant "would not yield [his] property to anyone who would be a purchaser of [Lot No. E.A. 222]" and if any purchaser claimed the property "[he] would breathe [his] wrath down on him with a vengeance." He also stated that "[t]he whole world is informed here that I am ready to brawl with any trespasser or usurper who would come in on [his] land. . . ." *Id.* at Exh. A. The second letter was published in the Marianas Variety.

On June 29, 2006, the court granted plaintiff's motion for temporary restraining order. Order Granting Motion For Temporary Restraining Order, No. 538 (June 29, 2006). In pertinent part, the Temporary Restraining Order required defendant John Pangelinan to "refrain immediately from impeding or interfering with the levy on and judicial sale of Lot No. E.A. 222, acquisition of property, subsequent occupancy, transfer, quiet enjoyment or other use." Temporary Restraining Order, at 4. The temporary restraining order was converted into a permanent injunction on August 2,

2006. Order Granting Motion For Permanent Injunction, No. 553 (Aug. 2, 2006).

On July 25, 2006, plaintiffs' attorney discovered that Mr. Francisco DLG. Aldan and defendant John Pangelinan had executed in 2003 a ten year lease on the southern portion of Lot No. E.A. 222 with an option to extend. Declaration of Lillian A. Tenorio at 2, No. 561 (Aug. 10, 2006). As of July 25, 2006, Mr. Aldan had been making regular monthly payments of $200 to defendant John Pangelinan. Due to this pending litigation, however, Mr. Aldan has since repudiated the contract.

On July 27, 2006, on the eve of the second scheduled public auction and sale of Lot No. E.A. 222, defendant executed and recorded at the Commonwealth Recorder's Office a "Confirmation Deed" and a "Quitclaim Deed." *See* Att. A & B. The Confirmation Deed purports that defendant conveyed a property interest to defendant's son, Christopher B. Pangelinan, on January 3, 1994, and the Quitclaim Deed purports that defendant conveyed a property interest to defendant's other son, Carlo B. Pangelinan on January 3, 1994. Plaintiffs did not discover these recordings until August 9, 2006.  Declaration of Lillian A. Tenorio at 2, No. 561 (Aug. 10, 2006).

On September 25, 2006, despite being ordered to do so, defendant John Pangelinan failed to appear in court. *See* Notice of Bench Warrant and Notice of Order Quashing Bench Warrant, No. 577 (Sept. 28, 2006).

## II. ANALYSIS

In a civil contempt action, defendant's contempt must be proved by clear and convincing evidence.[2] *United States v. Powers*, 629 F.2d 619, 626 n.6 (9th Cir. 1980). Here, because defendant John Pangelinan failed to appear in court on September 25, 2006, there is clear and convincing

---

[2] Contrary to defendant's assertion, the court has the inherent authority to enforce its orders and writs. *See* 18 U.S.C. § 401(3). This court will enforce its orders and writs unless and until a reviewing court directs otherwise.

evidence that defendant wilfully violated the court's order that defendant John Pangelinan appear in court on that date. **ACCORDINGLY, THE COURT HEREBY HOLDS** defendant John Pangelinan in **CIVIL CONTEMPT OF COURT** for violating the court's Order to Show Cause.

There is also clear and convincing evidence that defendant John Pangelinan violated the court's Temporary Restraining Order[3] and wilfully frustrated the court's Writ of Execution.[4] There is clear and convincing evidence that although the Confirmation Deed and Quitclaim deed purport to transfer defendant Pangelinan's property interests to his sons Carlo B. Pangelinan and Christopher B. Pangelinan, defendant John Pangelinan had no intention of transferring any interest to either son on January 3, 1994, the day of the purported transaction. Until July 26, 2006, John Pangelinan and Mercede Pangelinan have claimed a property interest in Lot No. E.A. 222. There are numerous instances connected to this case alone which supports this conclusion.

First, on January 17, 2006, defendant John Pangelinan and Mercede Pangelinan claimed that Lot No. E.A. 222 was exempt under the Commonwealth law because it is their property that they use to support themselves.

Second, if defendant John Pangelinan's claim that the winning bidder of defendants' property rights of E.A. 222 bought nothing, then defendants would not have had the motivation to substitute other real property for Lot No. E.A. 222. However, on July 17, 2006, defendants John Pangelinan and Mercede Pangelinan made a motion to substitute Lot No. E.A. 684 and Pre-War Lot No. E.A. 1511 for Lot No. E.A. 222. This is strong circumstantial evidence that defendants have a property

---

[3] In pertinent part, defendant violated the court's order that he "refrain immediately from impeding or interfering with the levy on and judicial sale of Lot No. E.A. 222, acquisition of property, subsequent occupancy, transfer, quiet enjoyment or other use," Temporary Restraining Order, at 4.

[4] Contrary to defendant's assertion, defendant is not being held in contempt of court to enforce the judgment. As the order to show cause clearly indicated, the contempt proceedings were based upon defendant's alleged violation of the court's temporary restraining order, which was subsequently converted into a permanent injunction, and defendant's alleged violation of the court's Writ of Execution.

interest in Lot No. E.A. 222 and did not transfer any property rights to their sons.

Third, the ten year lease that was executed by defendant John Pangelinan and Mr. Aldan in 2003 is circumstantial evidence that defendant John Pangelinan claimed a property interest in Lot No. E.A. 222 and did not transfer any of his property rights to his sons in 1994. If defendant John Pangelinan was truly a tenant at will of Lot No. E.A. 222, as he claims, then his agreement to the ten year lease would put defendant John Pangelinan in legal peril if and when his tenancy terminated. In addition, by failing to disclose to Mr. Aldan that defendant John Pangelinan had no ownership interest in Lot No. E.A. 222 and by agreeing to a ten year lease with Mr. Aldan, defendant John Pangelinan held himself out to be the owner of Lot No. E.A. 222.

Fourth, defendant John Pangelinan's timing of the recording of the Confirmation Deed and Quitclaim Deed to his sons on the eleventh hour before the second scheduled judicial sale of July 28, 2006, is further circumstantial evidence that defendant John Pangelinan's purpose was to thwart the court's Writ of Execution. Defendant John Pangelinan knew that plaintiffs were attempting to collect the judgment by the sale of Lot No. E.A. 222 when plaintiffs filed their motion for a writ of execution in December 2005. Yet, instead of recording the deeds at that time or notifying the parties and the court of the purported conveyances, defendants claimed that Lot No. E.A. 222 was statutorily exempt from being judicial sold.

Fifth, and most importantly, defendant John Pangelinan has admitted that he is the owner of Lot No. E.A. 222. In his first letter to the editor, defendant John Pangelinan attempted to dissuade any interested buyers of Lot No. E.A. 222 from bidding at the judicial auction. In the letter, he referred to Lot No. E.A. 222 as "my land in Papago." In addition, in his statement - "Right now I am drafting a huge lawsuit against all those responsible parties who put me in jail and against all those who injured or will injure me in my property related to that case. Believe me, you would not want to be a party to it." - defendant John Pangelinan implied that the purchaser of Lot No. E.A. 222, which he refers to as "my property," will be named a party in the complaint that he is currently drafting. In

his second letter to the editor, defendant John Pangelinan stated, "I also said that I would not yield my property to anyone who would be a purchaser [of Lot No. E.A. 222] and that if anyone who would come and claim it because he was a purchaser that [sic] I would breathe my wrath down on him with a vengeance." Plaintiffs' Request For Expedited Hearing On Plaintiffs' Combined Response To Order To Show Cause and Request For Injunctive Relief, exh. A, No. 519 (June 19, 2006).

**ACCORDINGLY**, the recording of the "Confirmation Deed" and a "Quitclaim Deed" by defendant John Pangelinan was done for the sole purpose of clouding the title to Lot No. E.A. 222 so that any purchaser of Lot No. E.A. 222 would receive nothing and defendant John Pangelinan would not lose his property interest in Lot No. E.A. 222. These actions are clear violations of the court's temporary restraining order, which prohibited defendant John Pangelinan from "impeding or interfering with the levy on and judicial sale of Lot No. E.A. 222, acquisition of property, subsequent occupancy, transfer, quiet enjoyment or other use," Temporary Restraining Order, at 4. Moreover, defendant John Pangelinan's attempt to cloud the title to Lot No. E.A. 222 has frustrated the court's Writ of Execution by creating an uncertainty for the buyer and delaying the sale.

**ACCORDINGLY, THE COURT HOLDS** John S. Pangelinan in **CIVIL CONTEMPT** for violating the court's Temporary Restraining Order and for frustrating the court's Writ of Execution.[5] **MOREOVER**, because the purported conveyances as described in the Confirmation Deed and

---

[5] As the court has indicated several times before, defendant's objections to subject matter jurisdiction, having been rejected numerous times by the court, are barred by the law of the case and are plainly frivolous. Both the court and the Ninth Circuit have made it clear that the court has proper jurisdiction over this case. *See Trinidad v. Pangelinan*, 54 F. App'x 470 (9th Cir. 2003) (affirming district court and denying further filings in the closed appeal); *Trinidad v. Pangelinan*, 32 F. App'x 357, 359 (9th Cir. 2002) (affirming that district court had proper jurisdiction over the case and the parties); Order Granting Motion to Compel and Motion for Sanctions at 1-2, No. 411 (Apr. 1, 2004) (denying Defendants' objection to jurisdiction). The U.S. Supreme Court has denied certiori. *Pangelinan v. Trinidad*, 538 U.S. 1064 (2003). Moreover, the court has jurisdiction over post-judgment proceedings pursuant to Federal Rule of Civil Procedure 69.

Quitclaim Deed are nothing more than sham transactions, **THE COURT HEREBY DECLARES** the Confirmation Deed and Quitclaim Deed **NULL AND VOID**.[6] Defendant John S. Pangelinan shall be **SANCTIONED** the amount of plaintiff's reasonable costs and attorney's fees expended in (1) investigating the title of Lot No. E.A. 222, (2) investigating the court's *sua sponte* order to show cause, and (3) investigating and filing their motion to stay sale and associated costs in staying the sale.

Plaintiffs' attorney shall, within fourteen days of the issuance of this order, submit a statement of her reasonable costs and attorney's fees expended in investigating the title of Lot No. E.A. 222, in investigating the court's *sua sponte* order to show cause, and in investigating and filing their motion to stay sale and associated costs in staying the sale. The court will then direct a date certain by which defendant John Pangelinan shall pay to plaintiffs' attorney the amount of the sanction. Plaintiffs may submit a proposed order that would be acceptable for recording purposes to nullify and void the recorded Confirmation Deed and Quit Claim Deed.

**IT IS SO ORDERED.**

**DATED** this 23rd day of October, 2006.

_____/s/_____
DAVID A. WISEMAN
Judge

---

[6] Furthermore, because plaintiffs had no notice of the purported transaction before they recorded their judgment lien, plaintiffs' interests are superior to that of the purported interests of Carlo B. Pangelinan and Christopher B. Pangelinan.