**Lillian A. Tenorio**
**Attorney at Law**
P.O. Box 501794 CK
Saipan, MP 96950

Tel.: 234-7850
Fax: 234-7855

Attorney for Plaintiffs/Judgment Creditors Angelito Trinidad, Esperanza David, Herman Tejada, Ronnie Palermino, and Tony Alovera

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE**
**DISTRICT OF THE NORTHERN MARIANA ISLANDS**

| | |
|---|---|
| **ANGELITO TRINIDAD, et al,** | **CIVIL ACTION NO. 97-0073** |
| **Plaintiffs,** | **PLAINTIFFS' COMBINED MOTION TO LIFT STAY ORDER AND TO CONFIRM SALE OF LOT NO. E.A. 222** |
| **vs.** | |
| **JOHN S. PANGELINAN, et al.,** | |
| **Defendants.** | **Date:**<br>**Time:**<br>**Judge: Hon. David A. Wiseman** |

Plaintiffs through counsel now move this court to lift the stay on the sale of Lot No. E.A. 222,[1] and to confirm the sale of real property sold in fee simple at auction on July 28, 2006, to Rufo T. Mafnas.

In support of their Combined Motion to Lift Stay Order and to Confirm Sale of Lot No. E.A. 222, Plaintiffs state as follows:

---

[1] *See* Notice of Order, No. 566 (Aug 15, 2006).

1   1.  On March 20, 2000, Plaintiffs obtained a judgment in their favor in the
2
3   amount of $205,787.34, which began accruing 6.197 percent interest per year from
4   the date of judgment.  The court also awarded attorney's fees of $70,200.00 and
5   costs of $3,375.20, totaling $279,362.54.
6
    2.  The court has also awarded the Plaintiffs additional costs in the form of
7
8   sanctions against Defendant as follows:
9   (a) a total of 889.84 ($866.66 for attorney's fees and costs of $23.18)  for
10
11  preparing their order to show cause awarded on July 30, 2001.
12  (b) total fees and costs of $4,848.85 incurred in filing Plaintiff's motion for a
13  temporary restraining order and preliminary injunction awarded on September 6,
14
15  2001.
16  (c) total fees and costs of $545 for defending against Defendants' frivolous
17  motion for accounting awarded on January 8, 2004.
18
19  (d) additional attorney's fees and costs of $214 for defendants failure to
20  appear for deposition awarded on April 1, 2004.
21
22  (e) on October 23, 2006, the court awarded additional attorney's fees and
23  costs as a sanction pursuant to its Order Finding John S. Pangelinan in Contempt of
24  Court.  The determination of the sum is pending court review.
25  3.  In an effort to collect upon the judgment in July 2001, Plaintiffs
26
27  successfully levied execution and purchased four parcels of land belonging to
28

defendants as fee simple determinable estates for a period of 55 year for $210,000

in partial fulfillment of the judgment.  *See* Order Confirming Sale of Fee Simple

Determinable Estates in Four Parcels of Real Property, No. 293 (July 13, 2001).

This still left a deficiency judgment which has been accruing interest of 6.197%

from July 1, 2001, in addition to attorney's fees, costs and sanctions imposed on

defendants.

4.  To satisfy and pay in full the remaining balance on the merit judgment,

interest, attorney's fees, costs and sanctions, the court granted the Plaintiffs'

motion for writ of execution on Lot No. E.A. 222 owned by the defendants.  *See*

Amended Order Granting Writ of Execution (March 8, 2006).

5.  On February 22, 2006, the court authorized Roy Alexander to levy

execution upon Lot No. E.A. 222 to satisfy the balance on the judgment, accrued

interest, and additional costs and sanctions by this court, after making demand of

the defendants to pay the execution or exhibit sufficient property subject to

execution.  *See* Order Authorizing Roy Alexander to Levy Execution (February 22,

2006).

6.  On March 21, 2006, Mr. Alexander's demand was served on the

Defendants notifying them that they could either pay the remaining balance of the

judgment, accrued interest and attorney's fees, costs, and expenses totaling

$97,737.64, or they could exhibit sufficient property subject to execution within 15

days from the date of service.  *See* Demand Pursuant to 7 CMC § 4204(a); Notice

of Levy on Lot No. E.A. 222 attached as Ex. "A."  Otherwise, execution would be

levied on Lot No. E.A. 222 and judicial sale would proceed.

7.  Defendants failed to respond to Mr. Alexander within the 15-day period

which ended on April 5, 2006.  *See* Report on Notice of Sale for June 2, 2006.

Consequently, Mr. Alexander scheduled the judicial sale of said lot for June 2,

2006 and notices were published accordingly.  *Id.*  The June 2, 2006 sale was

cancelled, however, due to Mr. Alexander's concerns about safety stemming from

defendant John Pangelinan's letter to the editor which was published in the June 2,

2006 issue of the MARIANAS VARIETY.  *Id*.

8.  On June 29, 2006, the court entered a Temporary Restraining Order

against defendant John Pangelinan and his agents, among others, directing

defendant Pangelinan to refrain from impeding or interfering with the levy on and

judicial sale of Lot No. E.A. 222, acquisition of property, subsequent occupancy,

transfer, quiet enjoyment or other use pending the final hearing and determination

of Plaintiffs' request for permanent injunction.  Order Granting Motion for

Temporary Restraining Order (June 29, 2006) ("June 29, 2006 TRO").  The court

later issued a Permanent Injunction against John Pangelinan on August 2, 2006.

*See* Order Granting Motion for Permanent Injunction, No. 553 (Aug. 2, 2006).

9.  The court also ordered that, subject to confirmation and approval of the

sale of Lot No. E.A. 222, defendant John S. Pangelinan and his agents, among others,  leave the premises peacefully without provoking a breach of the peace or interfering with the use and quiet enjoyment of the premises.  *See* June 29, 2006 TRO at 4-5.

10.  After the issuance of the TRO and the court having denied defendants subsequent  motion to substitute property, Mr. Alexander subsequently re-issued a revised Notice of Sale scheduled for July 28, 2006.  *See* Report and Account of Sale by R. Alexander attached herewith as Ex. "B" (Alexander's Report").

11.  This Notice of Sale was published both in the MARIANAS VARIETY (July 21 and 25, 2006) and the SAIPAN TRIBUNE (July 20 and 24, 2006).  *See id* and R. Alexander's Affidavit of Compliance with Publication and Posting Requirements attached as Ex. "C".

12.  Pursuant to the second Notice of Sale, Roy Alexander appeared at the offices of Alexander Realty, San Jose, Saipan, at 10:30 a.m., on July 28, 2006, and did offer to sell, at public auction, to the highest bidder all of the right, title, and interest of Defendants John S. Pangelinan, Merced B. Pangelinan, and Papa's Ltd., Inc., in and to the real property designated therein.  *See* Alexander's Report.

13.  Mr. Alexander's Report states that only two bids were made for the purchase of said property: (1) Plaintiffs' bid in the form of a set-off bid for the minimum bid sum of $98,101.14 and, (2)  Rufo T. Mafnas's bid of $100,000.

14.  Rufo T. Mafnas's bid of $100,000 being the highest, Mr. Alexander accepted his bid.  Mr Mafnas's representative, Olivia D. Aniñon, made the 10% deposit of $10,000, which was delivered on August 1, 2006, to the office of the Clerk of Court.  The remaining balance of $90,000, was to be paid in 30 days pending the court's confirmation of the sale.

15.  However, on August 14, 2006, the court stayed the sale as information surfaced that defendant John S. Pangelinan had recorded deeds on July 27, 2006, conveying his interest in Lot No. E.A. 222 to his sons Christopher and Carlo.  *See* Notice of Order, No. 566 (Aug. 15, 2006).

16.  The court has declared those deeds null and void in its Order Holding John S. Pangelinan in Civil Contempt of Court, No. 582 (October 23, 2006), removing the cloud that those deeds may have cast on the title of Lot No. E.A. 222, and taking away an impediment to the confirmation of the sale of the parcel to Mr. Mafnas.

17.  Mr. Mafnas's winning bid of $100,000 would fully pay and satisfy the remaining deficiency judgment including accrued interest, attorney's fees and costs, sanctions including the sum awarded in the October 23, 2006 Order, and Mr. Alexander's costs and expenses in levying execution on the lot.

18.  As of March 15, 2006, Defendants owed a balance on the merit judgment, accrued interest, attorney's fees, costs, and sanctions totaling

$97,737.64.  *See* Demand Pursuant to 7 CMC § 4204(a); Notice of Levy on Lot

No. E.A. 222.  Costs for the services of Roy Alexander is $1,930.50.  *See*

Alexander's Report.

19.  After the foregoing sums are paid, any funds remaining should be paid

to the defendants.

WHEREFORE, pursuant to sale of the property based on the bid made by

Mr. Mafnas, and the court's Order Holding John S. Pangelinan in Civil Contempt

of Court, the Plaintiffs pray:

1.  That the stay on the sale of Lot No. E.A. 222 to Rufo T. Mafnas shuold

be lifted.

2.  Further that this court  confirm and approve the sale accepted by Roy

Alexander as described herein, order Mr. Alexander to execute the Certificate of

Sale submitted herewith, authorize and order Mr. Alexander to execute and record

with the CNMI Recorder's Office the Quitclaim Deed transferring in fee simple

Lot No. E.A. 222 to Rufo T. Mafnas.

3.  That no later than 30 days after execution of the Quitclaim Deed, Mr.

Mafnas shall be directed to pay the remaining balance of $90,000, to Roy

Alexander who shall immediately deposit said sum with the Clerk of Court.  The

court may provide other instructions on the handling of the proceeds from the sale.

4.  That upon deposit to the Clerk of Court,  the Clerk of Court shall be

authorized to make the following payments:

a. the sum of $97,737.64, to the Plaintiffs to pay the balance on the merit judgment, accrued interest, attorney's fees, costs, and sanctions (excluding the sanctions awarded in the court's October 23, 2006 Order).

b.  the sum of $1,930.50 to Roy Alexander for services rendered and costs incurred as the Levying Officer.

Further, that  the Clerk be authorized to pay the sum of the sanction awarded by the court in its October 23, 2006 Order, upon receipt of the court's order determining said sum.  Any balance remaining after the foregoing sums have been paid shall be turned over to the defendants.

5. That upon execution of the Quitclaim Deed, defendants John S. Pangelinan, Merced Pangelinan, their immediate family including children and other relatives, their officers, agents, tenants-at-will, employees, successors, and attorneys, and all those in active concert or participation with them or on their behalf shall be ordered to leave the premises and property peacefully without provoking a breach of the peace or interfering with the use and quiet enjoyment of the premises.

6.  That upon notice by Roy Alexander of the execution of the Quitclaim Deed, the United States Marshal's office shall direct and supervise the departure,

or removal  from the premises, of the defendants John S. Pangelinan, Merced Pangelinan, their immediate family including children and other relatives, their officers, agents, tenants-at-will, employees, successors, and attorneys, and all those in active concert or participation with them or on their behalf.  After securing the premises, the United States Marshal's office shall tender the property to Roy Alexander who in turn shall surrender the premises to Mr. Mafnas.

7.  Defendants John S. Pangelinan, Merced Pangelinan, their immediate family including children and other relatives, their officers, agents, tenants-at-will, employees, successors, and attorneys, and all those in active concert or participation with them or on their behalf, shall not commit waste nor engage in conduct to destroy the property.


Respectfully submitted this 13th  day of November 2006.


_____/s/_____
LILLIAN A. TENORIO
Attorney for Plaintiffs