F I L E D
Clerk
District Court

DEC 18 2006

For The Northern Mariana Islands
By_____
(Deputy Clerk)

IN THE UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF THE NORTHERN MARIANA ISLANDS

| | |
|---|---|
| ANGELITO TRINIDAD, et al., <br><br> Plaintiff, <br> vs. <br> JOHN S. PANGELINAN, et al., <br><br> Defendant. | CIVIL ACTION NO. 97-0073 <br><br> **ORDER GRANTING MOTION TO CONFIRM SALE OF LOT NO. E.A. 222** |

**THIS MATTER** came before the court on November 13, 2006, on plaintiffs' written motion to confirm sale of Lot No. E.A. 222.[1] **THIS COURT** has reviewed plaintiffs' motion to confirm the sale of Lot No. E.A. 222 sold at auction on July 28, 2006, and hereby **APPROVES** and **CONFIRMS** the sale of Lot No. E.A. 222 in fee simple to Rufo T. Mafnas.

Based on the evidenced adduced at the hearing, the court record, and the court's orders previously entered in this matter, the court finds as follows:

1. On March 20, 2000, plaintiffs obtained a judgment in their favor in the amount of $205,787.34, which began accruing 6.197 percent interest per year from the date of judgment. The court also awarded attorney's fees of $70,200.00 and costs of $3,375.20.

2. The court also awarded the plaintiffs additional costs in the form of

---

[1] The court, having received no opposition to the motion, deemed that a hearing was not necessary. Accordingly, the hearing for this motion was taken off calendar. See Order Taking Hearing Off Calendar, No. 601 (Dec. 13, 2006).

sanctions against defendant.

3. In an effort to collect upon the judgment in July 2001, plaintiffs successfully levied execution and purchased four parcels of land belonging to defendants as fee simple determinable estates for a period of 55 year for $210,000 in partial fulfillment of the judgment. *See* Order Confirming Sale of Fee Simple Determinable Estates in Four Parcels of Real Property, No. 293 (July 13, 2001). This left a deficiency judgment which has been accruing interest of 6.197% from July 1, 2001, in addition to attorney's fees, costs and sanctions imposed on defendants.

4. To satisfy and pay in full the remaining balance on the merit judgment, interest, attorney's fees, costs and sanctions, the court granted plaintiffs' motion for writ of execution on Lot No. E.A. 222 owned by defendants. *See* Amended Order Granting Writ of Execution, No. 502 (Mar. 8, 2006).

5. On February 22, 2006, the court authorized Roy Alexander to levy execution upon Lot No. E.A. 222 to satisfy the balance on the judgment, accrued interest, and additional costs and sanctions by this court, after making demand of defendants to pay the execution or exhibit sufficient property subject to execution. *See* Order Authorizing Roy Alexander to Levy Execution, No. 492 (February 22, 2006).

6. On March 21, 2006, Mr. Alexander's demand was served on defendants notifying them that they could either pay the remaining balance of the judgment, accrued interest and attorney's fees, costs, and expenses totaling $96,737.64, or they

could exhibit sufficient property subject to execution within 15 days from the date of service. *See* Demand Pursuant to 7 CMC § 4204(a), No. 506 (May 15, 2006); Notice of Levy on Lot No. E.A. 222, in *id.* exh. "A." Otherwise, execution would be levied on Lot No. E.A. 222 and judicial sale would proceed.

7. Defendants failed to respond to Mr. Alexander within the 15-day period which ended on April 5, 2006. *See* Report on Notice of Sale for June 2, 2006, No. 507 (June 2, 2006). Consequently, Mr. Alexander scheduled the judicial sale of said lot for June 2, 2006 and notices were published accordingly. *Id.* The June 2, 2006, sale was cancelled, however, due to Mr. Alexander's concerns about safety stemming from defendant John Pangelinan's letter to the editor which was published in the June 2, 2006, issue of the MARIANAS VARIETY. *Id.*

8. On June 29, 2006, the court entered a Temporary Restraining Order against defendant John Pangelinan and his agents, among others, directing defendant Pangelinan to refrain from impeding or interfering with the levy on and judicial sale of Lot No. E.A. 222, acquisition of property, subsequent occupancy, transfer, quiet enjoyment or other use pending the final hearing and determination of plaintiffs' request for permanent injunction. Order Granting Motion for Temporary Restraining Order, No. 538 (June 29, 2006) ("June 29, 2006, TRO"). A Permanent Injunction was later issued on August 2, 2006. *See* Order Granting Motion for Permanent Injunction, No. 553 (Aug. 2, 2006).

9. The court also ordered that, subject to confirmation and approval of the sale of Lot No. E.A. 222, defendant John S. Pangelinan and his agents, among others, leave the premises peacefully without provoking a breach of the peace or interfering with the use and quiet enjoyment of the premises. *See* June 29, 2006, TRO at 4-5.

10. After the issuance of the TRO and the court having denied defendants subsequent motion to substitute property, Mr. Alexander subsequently re-issued a revised Notice of Sale scheduled for July 28, 2006.[2]

11. This Notice of Sale was published both in the MARIANAS VARIETY (July 21 and 25, 2006) and the SAIPAN TRIBUNE (July 20 and 24, 2006).[3]

12. Pursuant to the second Notice of Sale, Roy Alexander appeared at the offices of Alexander Realty, San Jose, Saipan, at 10:30 a.m., on July 28, 2006, and did offer to sell, at public auction, to the highest bidder all of the right, title, and interest of Defendants John S. Pangelinan, Merced B. Pangelinan, and Papa's Ltd., Inc., in and to the real property designated therein. *See* Report and Account of Sale, *in* Plaintiffs' Combined Motion to Lift Stay Order and to Confirm Sale of Lot No. E.A. 222, exh. B, No. 587 (Nov. 13, 2006) [hereinafter Mr. Alexander's Report].

13. Mr. Alexander's Report states that only two bids were made for the purchase of said property: (1) Plaintiffs' bid in the form of a set-off bid for the

---

[2] *See* Ex. "B" to Pls.' Combined Motion to Lift Stay Order and to Confirm Sale of Lot No. E.A. 222 (Report and Account of Sale by R. Alexander "Alexander's Report") .

[3] *See id.* and Ex. "C" to Pls.' Combined Motion to Left Stay Order and to Confirm Sale of Lot No. E.A. 222 (Affidavit of Compliance with Publication and Posting Requirements).

minimum bid sum of $98,101.14 and, (2) Rufo T. Mafnas's bid of $100,000.

14. Rufo T. Mafnas's bid of $100,000 being the highest, Mr. Alexander accepted his bid. Mr. Mafnas's representative, Olivia D. Aniñon, made the 10% deposit of $10,000, which was delivered on August 1, 2006, to the office of the Clerk of Court. Submission of Bid Deposit, No. 552 (Aug. 1, 2006). The remaining balance of $90,000, was to be paid in 30 days pending the court's confirmation of the sale.

15. However, on August 14, 2006, the court stayed the sale as information surfaced that defendant John S. Pangelinan had recorded deeds on July 27, 2006, conveying his interest in Lot No. E.A. 222 to his sons Christopher and Carlo. *See* Notice of Order, No. 566 (Aug. 15, 2006). The stay was exhausted on August 24, 2006.

16. The court has declared those deeds null and void in its Order Holding John S. Pangelinan in Civil Contempt of Court, No. 582 (October 23, 2006).

17. After the remainder of the deficiency judgment, as well as attorney's fees, costs, and sanctions are paid, any funds remaining shall be paid to the defendants.

**FOR THE FOREGOING REASONS,**

**IT IS ORDERED THAT:**

1. The court approve Mr. Alexander's Report;

2. The court finds the purchase price for Lot No. E.A. 222 to be reasonable;

3. The sale to Mr. Mafnas, which was accepted by Roy Alexander, shall be approved and confirmed;

4. The court shall authorize Mr. Alexander to execute a Certificate of Sale, and a Quitclaim Deed transferring in fee simple Lot No. E.A. 222 to Rufo T. Mafnas and to record those documents with the Office of the Commonwealth Recorder;

5. After execution of the Certificate of Sale, Mr. Mafnas shall pay the remaining balance of $90,000 no later than 30 days after the execution of the Quitclaim Deed to Mr. Alexander who shall immediately deposit said sum with the Clerk of Court;

6. Upon deposit to the Clerk of Court, the Clerk of Court shall make payments as further directed by the court in its final accounting;

7. Upon execution of the Quitclaim Deed, defendants John S. Pangelinan, Merced Pangelinan, their immediate family including children and other relatives, their officers, agents, tenants-at-will, employees, successors, and attorneys, and all those in active concert or participation with them or on their behalf are hereby ordered to leave the premises and property peacefully without provoking a breach of the peace or interfering with the use and quiet enjoyment of the premises;

8. Mr. Alexander shall notify the United States Marshal's office of the execution of the Quitclaim Deed, and thereupon, the United States Marshal's office shall direct and supervise the departure of, or removal from the premises, defendants

John S. Pangelinan, Merced Pangelinan, their immediate family including children and other relatives, their officers, agents, tenants-at-will, employees, successors, and attorneys, and all those in active concert or participation with them or on their behalf. If necessary, the United States Marshal's office may request the assistance of the Department of Public Safety. After securing the premises, the United States Marshal shall tender the property to Roy Alexander who shall surrender the premises to Mr. Mafnas; and

9. Defendants John S. Pangelinan, Merced Pangelinan, their immediate family including children and other relatives, their officers, agents, tenants-at-will, employees, successors, and attorneys, and all those in active concert or participation with them or on their behalf shall not commit waste nor engage in conduct to destroy the property.

**IT IS SO ORDERED.**

**DATED** this __18__ day of December 2006.

_____
DAVID A. WISEMAN
Judge